State v. Bruin.

STATE OF MISSOURI, Respondent, *v.* LAWRENCE B. BRUIN, Appellant.

*Crimes—Larceny—Possession of Stolen Property—Evidence.*—The possession of recently stolen property is presumptive evidence of guilty possession, and if unexplained by direct evidence, or by the attending circumstances, or by the character of the possessor, is taken as conclusive; but what is to be regarded as a recent possession depends so much upon the character of the property stolen and the circumstances surrounding each particular case, that no general rule can be laid down applicable to all cases alike.

*Appeal from St. Charles Circuit Court.*

*E. A. Lewis,* for appellant.

I. The court erred in giving the second instruction asked for by the State; that instruction treats the presumption arising from the possession of stolen property, not satisfactorily accounted for, as a presumption of law, conclusive of guilt, and not as a mere natural presumption of fact, which, like all others of its class, may be repelled by any other facts whatsoever that are naturally inconsistent with the fact to be presumed. It may be effectually destroyed by proof of an *alibi,* or by any other means which would show that it was naturally or physically impossible for the defendant to have committed the offence charged; and yet the instruction rejects each and all of these, except the solitary method of proving the precise way in which the possession originated. This is transforming the evidence of crime into the crime itself. Multitudes of cases arise in which it is impossible for an innocent party to explain how he came to be in possession of a stolen article. The real thief may have surreptitiously conveyed it into the pocket or dwelling of the person accused, and yet, according to this instruction, the latter must suffer the penalty, although he may succeed in proving that the theft was perpetrated by another individual, and that he, himself, was so distant from the scene of action as to render his participation impossible. The authorities all agree that the presumption in question may

be rebutted in a variety of ways besides the one singled out by the instruction. Proof of good character, alone, has been held sufficient to destroy it. It is, in fact, considered of slight value when standing alone, and requires to be supported by corroborating circumstances. If any such corroborating circumstances may be found in this case, the instruction denies to them any office whatever, and deprives the jury of all opportunity to weigh their sufficiency or insufficiency to establish guilt. (Burrill's Circum. Ev. 560, 562, 566; 3 Greenleaf Ev. § 31; Sharswood's Starkie Ev. n. 666, 671; 2 Starkie Ev. 450; 1 Greenleaf Ev. § 11; 1 Cow. & Hill, Notes to Phil. Ev. 427, n. 325–169; Roscoe Crim. Ev. 15; State v. Merrick, 19 Maine, 1 App. 398; Engleman v. The State, 2 Ind. 96, 97.)

II. The instruction is a commentary on the weight of the evidence, and usurps the province of the jury. It informs them, not that one fact may reasonably be inferred from another, but that it is absolutely proven thereby, thus substituting for the scrutation of the jury the conclusions of the court.

III. The testimony develops four distinct elements of defence, viz: 1. That the defendant's acquisition of the stolen property was by an innocent purchase from the supposed owner. 2. That the defendant first obtained possession of the property in Lincoln county, and, therefore, could not be convicted of having stolen it in St. Charles. 3. That the larceny was, in fact, perpetrated by another person. 4. An *alibi*. The instruction directs the jury to discard from their consideration all these defences, whether proven or not, except the first.

IV. The mischief of the objectionable instruction is not cured by any other given in the case. The defendant's first instruction merely informs the jury what facts are necessary to be shown before they can find the defendant guilty. The instruction tells them that all those facts are fully proven, unless the defendant has satisfactorily accounted for his possession of the property.

*John C. Orrick*, for respondent.

The court below did not err.

I. Recent possession of stolen property is presumptive evidence of guilt, unless such possession is satisfactorily accounted for. (1 Phil. Ev. 637, 638, 634 ; Roscoe's Crim. Ev. 15 ; Burrill on Circum. Ev. 445, § 18 ; 1 Hayw. 463 ; 2 Const. Rep. 692 ; N. Y. Gen. Sess. Sept. Term, 1822.)

II. The instructions of the court below should be taken together, and if they state the law applicable to the facts, the refusal of other instructions asked is not error. (Bay v. Sullivan, 30 Mo. 191 ; Beal v. Cullum, 31 Mo. 258.)

BAY, Judge, delivered the opinion of the court.

At a special term of the St. Charles Circuit Court, held in January, 1864, the defendant was indicted, tried, and convicted for grand larceny, and sentenced to two years' imprisonment in the penitentiary. The indictment charged him with feloniously stealing, taking, and carrying away, at the county of St. Charles, on the night of the 23d of November, 1863, a buggy, of the value of $250, the property of one Martin Ehrhardt. The evidence, on the trial, tended to show that a buggy belonging to Ehrhardt, of the value of $250, was stolen from the depot of the North Missouri Railroad Company, in St. Charles, at the time alleged in the indictment, and on the 9th of December following was found in possession of defendant, at Quincy, in the State of Illinois, and was there sold by him for the sum of $180 ; that, on the night of the alleged taking, a bay horse and set of harness belonging to Dr. Overall also disappeared, and that defendant sold the harness with the buggy. On the part of the defence, evidence was introduced tending to show that, at the time of the commission of the larceny, defendant was about thirteen miles from St. Charles, at what is known as O'Fallon's station, and remained there several days, and then left on foot for Lincoln county, and on his way met with an acquaintance riding in the stolen buggy, and then

purchased it at the price of one hundred dollars; that on the night of the larceny a man was seen harnessing a bay horse to the buggy, at the depot, and the witness who saw him held a lantern up to his face, and states that it was not the defendant. There was also evidence introduced on the part of the State tending to show that defendant had made false and contradictory statements in regard to the manner in which he came into possession of the property.

The court then gave, among others, the following instruction: "The jury are instructed that recent possession of stolen property is presumptive evidence of guilt, and if the jury believe, from the evidence, that the defendant had possession of the buggy recently after the taking, they are instructed, that, unless such possession is satisfactorily accounted for, they will find the defendant guilty."

To the giving of which the defendant objected, and then asked the court to modify the same so as to make it read thus: "The jury are instructed that recent possession of stolen property is presumptive evidence of guilt, and if the jury believe, from the evidence, that the defendant had possession of the buggy in question recently after the taking, they are instructed, that unless such possession is satisfactorily accounted for, or the fact of the taking by the defendant is negatived by direct and sufficient testimony to that effect, they will find the defendant guilty"—which the court refused to do. The giving of said instruction, without the modification asked for, is the main ground of error relied upon for a reversal of the judgment.

There is little or no conflict of authority as to the effect which is to be given to the fact of possession of property recently stolen. Burrill, in his treatise on circumstantial evidence, lays down the rule to be this: "That the possession of property, which has been recently stolen, raises such a presumption of guilt against the possessor as to throw upon him the burden of showing how he came by it, or that he came honestly by it, (or that his possession is consistent with his innocence,) and in the event of his failing to do so,

to warrant the final inference or conclusive presumption of his being the real offender." Greenleaf, vol. 1, § 34, says: "That the possession of the fruits of crime recently after its commission, is *prima facie* evidence of guilty possession, and if unexplained, either by direct evidence or by the attending circumstances, or by the character and habits of life of the possessor, or otherwise, it is taken as conclusive."

The strength of the presumption, arising from possession, depends upon the time that intervenes between the taking and finding, and what is to be regarded as recent possession depends so much upon the character of the property stolen and the circumstances surrounding each particular case, that no general rule can be laid down applicable to all cases alike.

The fact that a party may not be able to show how and when he acquired possession of the property, is by no means conclusive of his guilt, but merely raises a presumption of guilt, which he may rebut in various ways, such as proof of good character, which has been held sufficient in itself in the absence of any corroboratory circumstance of guilt; also, that at the time of the commission of the offence, he was some distance from the place of the taking, or that his possession commenced subsequent to the taking, or by any other facts or circumstances tending to show that his possession is perfectly consistent with his innocence. The instruction given by the court was calculated to mislead the jury, by creating the impression that nothing short of proving how the possession originated would suffice as a defence, thus taking from the consideration of the jury any other element of defence that might be introduced in the case. We do not suppose the court intended that it should receive such an interpretation, but the phraseology is such that the jury may have so regarded it, more particularly if they had knowledge of the fact that the court had refused the modification asked.

The instruction, as an abstract proposition of law, may not be particularly objectionable, but in its application to the

35—VOL. XXXIV.

case under consideration was certainly calculated to mislead
the jury.

The other judges concurring, the judgment will be re-
versed and the case remanded for a new trial.